Heath A Havey (Nevada Bar No. 7008)
**Havey Law Offices LLC**
3753 Howard Hughes Parkway
Suite 200
Las Vegas, Nevada 89169
Phone: 916-473-3404
E-mail: hhavey@haveylawoffices.com

Galen T. Shimoda (Utah Bar No. 18094) [Counsel Pro Hac Vice (Motion Pending)]
Austin D. Sork (Utah Bar No. 19693) [Counsel Pro Hac Vice (Motion Pending)]
**Shimoda & Rodriguez Law, PC**
1414 E. Murray Holladay Road
Holladay UT 84117
Telephone: (833) 201-0213
attorney@shimodalaw.com
asork@shimodalaw.com

Attorneys for Plaintiff Ammon Stuber and similarly situated employees

**IN THE UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| **AMMON STUBER,** individually and on behalf of all other similarly situated employees,<br><br>Plaintiffs,<br><br>vs.<br><br>**AMERICAN HOMES 4 RENT, L.P.**, a Nevada Corporation; and DOES 1 to 10, inclusive,<br><br>Defendants. | **COLLECTIVE ACTION COMPLAINT FOR DAMAGES:**<br><br>**1. Failure to Pay Overtime Under the FLSA (FLSA Collective Action)**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Case No.<br><br>Assigned Judge<br>Referred Magistrate Judge |

Plaintiff Ammon Stuber ("Plaintiff"), on behalf of himself and all similarly situated employees, hereby files this Complaint against American Homes 4 Rent, L.P.; and DOES 1 to 10, inclusive (hereinafter all collectively referred to as "Defendants"). Plaintiff alleges the following:

**INTRODUCTION**

1. Plaintiff brings this action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §§ 201, *et seq*. ("FLSA") on behalf himself and all current and former employees, similarly situated, and misclassified independent contractors (hereinafter, regardless of precise title, referred to as "CCRs") who work and/or worked for Defendants within the United States (hereinafter referred to as the "Collective" or "Collective Action Members").

2. Plaintiff and Collective Action Members regularly worked more than 40 hours a workweek. However, Defendant does not pay Plaintiff and Collective Action Members their overtime work hours at a rate of one and one-half times their regular rate of pay.

3. Defendant's actions violate the Fair Labor Standards Act ("FLSA") by depriving Plaintiff and Collective Action Members of overtime wages they have lawfully earned for working more than 40 hours in each workweek.

4. The U.S. Department of Labor recognizes that call center jobs, which are similar to the positions held by Defendant's Representatives, are homogenous and it issued Fact Sheet #64 in July 2008 to alert call center employees to some of the abuses which are prevalent in the industry. One of those abuses, which is occurring in this case, is Defendant's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *See* DOL Fact Sheet #64: Call Centers under the Fair Labor

Standards, available at: https://www.dol.gov/agencies/whd/fact-sheets/64-flsa-call-centers (last visited September 24, 2025.

5. The Department of Labor's Fact Sheet #64 specifically condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications, and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities must be kept." *Id.*

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the parties and subject matter of this action pursuant to, *inter alia*, 28 U.S.C. section 1331 as this case involves a federal question under the FLSA, 29 U.S.C. section 207, and 28 U.S.C. section 1337 .

7. Venue in this action is proper in this Court pursuant to 28 U.S.C. section 1391(b) as a substantial part of the events or omissions giving rise to this claim occurred in this District and Division.

## PARTIES

8. Ammon Stuber is an individual over the age of eighteen (18) and is a resident of the State of Utah.

9. Plaintiff brings this collective action on behalf of himself and other Collective Action Members for whom Defendant failed to pay overtime in accordance with applicable FLSA laws.

10. Defendant required its Representatives to begin work prior to their scheduled shifts and perform a number of off-the-clock tasks that were integral and indispensable to their jobs, including booting up computers and logging into numerous software programs. The Representatives only "clocked in" and received compensation after this preliminary work was completed, though they were required to perform this work to be "phone ready" when their scheduled shifts began.

11. The proposed FLSA Collective of Collective Action Members is defined as:

> **All Defendant's hourly employees, current and former, who worked for Defendant during the last three years before this Complaint was filed.**

("Collective Action Members"). At all relevant times, Plaintiff and the proposed Collective Action Members have been entitled to the rights, protections, and benefits provided under the FLSA, 29 U.S.C. section 201 *et seq*.

12. On information and belief, Plaintiff alleges Defendant American Homes 4 Rent, L.P. is now and/or at all times mentioned in this Complaint, a Nevada based business, and the owner and operator of an industry, business and/or facility doing business in the State of Utah and across the country.

13. Defendants DOES 1 through 10 are affiliates, subsidiaries and related entities and the alter egos of each of the other Defendants named herein, corporate or otherwise, who participated in and are liable for the actions herein alleged. Plaintiff will seek to amend this Complaint to allege the true names and capacities of these DOE Defendants when they are ascertained.

14. At all times mentioned herein, each Defendant was the agent or employee of each of the other Defendants and was acting within the course and scope of such agency or

employment. Defendants are or were an "employer" within the meaning of 29 U.S.C. section 203(d) at all relevant times. The Defendants are jointly and severally liable to Plaintiff.

15. Defendants, and each of them, are now and/or at all times mentioned in this Complaint, members of and/or engaged in a joint employment, joint venture, partnership and common enterprise, and were acting within the course and scope of, and in pursuance of said joint employment, joint venture, partnership and common enterprise.

16. Defendants, and each of them, now and/or at all times mentioned in this Complaint, approved, ratified, acquiesced, aided or abetted the acts and omissions alleged in this Complaint.

17. Defendants proximately caused Plaintiff and the Collective to be subjected to the unlawful practices, wrongs, complaints, injuries and/or damages alleged in this Complaint.

## GENERAL ALLEGATIONS

18. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 17 as though fully set forth herein.

19. At all times material herein, Plaintiff and the proposed Collective Action Members have been entitled to overtime compensation at a rate of not less than one-half times their regular rate of pay for the hours of overtime they have worked.

20. The FLSA, 29 U.S.C. section 207, requires that Defendants shall not employ any employee for a workweek longer than forty hours unless the employee receives compensation for the excess hours at a rate not less than one and one-half times their regular rate.

21. On March 25, 2024, Plaintiff began working for Defendant as a Leasing Agent.

22. Plaintiff and similarly situated employees were required to boot up and sign in on their computer and laptops to access a time management system called ADP. This process required multi-step verification and was required for Plaintiff and similarly situated employees to clock into work at the start of their shift and after taking a lunch break. Plaintiff and similarly situated employees were required to undergo this process by Defendants and needed to complete this process to perform their job duties.

23. This boot up and login process, which includes the following steps:

a. The Representatives plugged in and turned on their computer and logged in;

b. The Representatives then opened and logged into VPN remote desktop software;

c. The Representatives then had to use their personal devices to authenticate login for dual-factor authentication which was required to open phone systems and software;

d. The Representatives then opened ADP software and were able to clock in.

24. The ADP timekeeping system and work-related programs would only be active after Plaintiff and similarly situated employees booted up their computers. The boot up time took approximately five to ten minutes each day. The boot-up and login process described above took substantial time on a daily basis, depending on how fast/slow the computers and programs were operating.

25. Defendants failed to compensate Plaintiff and similarly situated employees for this boot up time.

26. Defendants had a policy to begin work early so that they could start work at their scheduled start time. Plaintiff and other Representatives were pressured to work substantial amounts of uncompensated, off-the-clock time as part of their job duties.

27. Plaintiff and similarly situated employees were required to use their work computers to clock in and complete their job duties, including communicating with clients, accessing calls, recording work statistics, and communicating with other employees. The use of these computers, including time spent turning them on and logging into them, was thus indispensable to Plaintiff's and similarly situated employees' job duties and was required by Defendants.

28. Without booting up their computer, Plaintiff and similarly situated employees could not perform the essential functions of their job such as calling clients or responding to emails.

29. Plaintiff's supervisor told Plaintiff and similarly situated employees that they should get to work "early" to account for the boot up times so that they could be logged in and complete multi-step authentication prior to when their shift was scheduled to start.

30. For example, If Plaintiff and similarly situated employees showed up to work at 7:58 a.m., with a shift that started at 8:00 a.m., and were not able to clock in due to boot up time until 8:03 a.m., they were punished for not being on time, despite having arrived to work and being at their work station prior to their shift start.

31. Plaintiff and similarly situated employees also repeated this process after their lunch break, resulting in another five to ten minutes of boot up and multi-step verification time.

32. As a result of Defendants' universal policy, Plaintiff and similarly situated employees were required to perform at least twenty-five minutes, if not more, of unpaid work each week (at least 5 minutes of boot up time each day, 5 days a week). This uncompensated time was mandatory and integral to Plaintiff's and similarly situated employees' job duties, creating a consistent and measurable burden across all affected employees.

33. Because Plaintiff and similarly situated employees typically worked scheduled shifts of at least 40 hours per week, their required pre-shift work was nearly always overtime work, compensable at 1.5 times their regular rate of pay.

34. By requiring Plaintiff and similarly situated employees to log their time only after booting up their computers and completing multi-step verification, Defendants implemented a company-wide practice that caused thousands of hours of uncompensated work. This policy affected Plaintiff and all similarly situated employees, demonstrating a systematic failure to pay for time that was necessary for the performance of their jobs.

35. Defendants had express and constructive knowledge that its Representatives began the pre-shift boot-up and login process while off-the-clock to make sure they were "phone ready" and "clocked in" on time.

36. At all relevant times, Defendants required and directly benefited from the off-the-clock work performed by Plaintiff and all other Representatives in connection with the pre-, mid- and post-shift activities described above.

37. At all relevant times, Defendants controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other Representatives.

38. At all relevant times, Defendant was able to track the amount of time Plaintiff and all other Representatives spend in connection with the boot up time; however, Defendants failed to do so and failed to compensate Plaintiff and all other Representatives for the off-the-clock work they performed.

39. At all relevant times, Defendants used their attendance and adherence policies against Plaintiff and the other Representatives in order to pressure them into performing work off-the-clock.

40. Defendants expressly trained and instructed Plaintiff and all other Representatives to perform these off-the-clock work activities when they were not "clocked in" to Defendant's timekeeping system.

41. Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff and the Representatives worked over 40 hours and exactly which weeks they worked under 40 hours.

42. Despite knowing Representatives performed off-the-clock work before, during, and after their shifts, Defendant failed to make any effort to stop or disallow the off-the-clock work and instead suffered and permitted it to happen.

43. Plaintiff also earned non-discretionary "bonuses". Defendants failed to incorporate these bonuses into the regular rate of pay.

44. Further Plaintiff earned non-discretionary "leasing bonuses." Defendants also failed to incorporate these bonuses into the regular rate of pay.

## CAUSES OF ACTION

## FIRST CAUSE OF ACTION

**Failure to Pay Overtime Under the FLSA**

**(As to all Defendants)**

45. Plaintiff incorporates by reference and re-alleges paragraphs 1 through 44 as though fully set forth herein.

46. Plaintiff brings his FLSA claim as a collective action on behalf of himself and Collective Action Members pursuant to 29 U.S.C. § 216(b).

47. Defendant violated, and is violating, the FLSA by employing non-exempt employees, such as Plaintiff and similarly situated employees, in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for the hours they worked in excess of 40 hours in a given workweek.

48. Defendant's unlawful conduct harmed Plaintiff and Collective Action Members by depriving them of the overtime wages they are owed.

49. Defendants failed to pay the proper regular rate of pay to Plaintiff and Collective Action Members by depriving them of the overtime wages they are owed.

50. Accordingly, Defendant owes Plaintiff and Collective Action Members the difference between the wages actually paid and the overtime wages actually earned.

51. Because Defendant knew or showed reckless disregard for whether its pay scheme violated the FLSA, Defendant owes Plaintiff and Collective Action Members these wages for at least the past 3 years.

52. Defendant is also liable to Plaintiff and Collective Action Members for an amount equal to all their unpaid overtime wages as liquidated damages.

53. Finally, Plaintiff and the other Hourly Employees are entitled to recover all interest as well as reasonable attorneys' fees and costs incurred in this action.

54. As a proximate result of Defendants' conduct, Plaintiff and Collective Action Members have been damaged as stated above and also below in the section entitled "DAMAGES," which is incorporated here to the extent pertinent as if set forth here in full.

## DAMAGES

WHEREFORE Plaintiff, individually and on behalf of all other Collective Action Members, requests relief as follows:

1. A jury trial;

   a. An Order designating this lawsuit as a collective action and authorizing notice to Collective Action Members, allowing them to join this action by filing a written notice of consent;

   b. An Order finding Defendant liable to Plaintiff and Collective Action Members for unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

   c. A Declaration that Defendant's actions violate the FLSA;

   d. Judgment awarding Plaintiff and Collective Action Members all unpaid wages, liquidated damages, statutory damages, and any and other penalties available under the FLSA;

   e. An Order awarding attorneys' fees, costs, and expenses;

   f. An Order awarding pre- and post-judgement interest at the

highest applicable rates; and

g. Such other and further relief as may be necessary and appropriate.

Dated: December 6, 2025

**Havey Law Offices LLC**

By: /s/ *Heath A. Havey*

Heath A. Havey
Attorneys for Plaintiff